**J. E. BERNARD & CO., Inc.**

**v.**

**UNITED STATES.**

**C.D. 3684; Protest 64/1199–13991.**

United States Customs Court,
Second Division.

Feb. 3, 1969.

Schwartz & Lidstrom, Chicago, Ill., and Barnes, Richardson & Colburn, New York City (Earl R. Lidstrom, Chicago, Ill., and Joseph Schwartz of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Charles P. Deem and Arthur E. Schwimmer, New York City, trial attorneys), for defendant.

Before RAO, FORD, and ROSENSTEIN, Judges.

ROSENSTEIN, Judge:

This case concerns the classification of clock weights imported from West Germany in 1962 as clock assemblies consisting of two pieces each, under paragraph 368(c) (3), Tariff Act of 1930, (19 U.S.C. § 1001, paragraph 368(c) (3)) as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (T.D. 52739), and the assessment with duty thereunder at the rate of 32½ per centum ad valorem plus 1½ cents for each piece.* Plaintiff claims that the articles are properly classifiable under the provision for parts of clocks in paragraph 368(c) (6) of said

---

* The manufacturer's invoice accompanying the entry papers herein lists a total of 2,000 assemblies which, according to the examiner's advisory classification noted thereon (and subsequently adopted by the collector), consist of two pieces each, making a total of 4,000 pieces. However, in liquidation, the 1½ cents rate was assessed upon only 2,000, rather than 4,-000, pieces.

Act, as modified, dutiable at the rate of 32½ per centum ad valorem.

The pertinent tariff provisions read: Paragraph 368:

> (c) Parts for any of the foregoing shall be dutiable as follows:
>
> \* \* \* \* \* \* \* \* \* \* \* \*
>
> (3) each assembly or subassembly (unless dutiable under clause (1) or (4) of this subparagraph) consisting of two or more parts or pieces of metal or other material joined or fastened together shall be subject to a duty of 65 per centum ad valorem and, in addition, to a duty of 3 cents for each such part or piece of material, except that in the case of jewels the specific duty shall be 25 cents instead of 3 cents. For the purpose of this clause and clause (4) of this subparagraph, bimetallic balance wheels, and main springs with riveted ends, shall each be considered as one part or piece;

Idem, as modified by T.D. 52739:

> (c) Parts for articles provided for in paragraph 368(a), Tariff Act of 1930, shall be dutiable as follows:
>
> \* \* \* \* \* \* \*˙ \* \*ˋ \* \* \*
>
> (3) Each assembly or subassembly (unless dutiable under paragraph 368(c) (1) or (4), Tariff Act of 1930) consisting of two or more parts or pieces of metal or other material joined or fastened together, intended or suitable for any article provided for in item 368(a)(1)(2) in this Part ......... 12½¢ for each jewel, if any, and 1½¢ for each other part or piece and 32½% ad val.

Paragraph 368(c)(6):

> All other parts (except jewels), 65 per centum ad valorem.

Idem, as modified by T.D. 52739:

> Parts provided for in paragraph 368(c)(6), Tariff Act of 1930, for any article provided for in item 368(a)(1)(2) in this Part ................... 32½% ad val.

———◆———

The sole witness at the trial, called on behalf of plaintiff, was Alfred Schuderer, who has been employed for 20 years by the Welby Corporation, a division of Elgin National Watch Company, and for whose account the subject merchandise was imported. He is presently in charge of the repair department. The witness testified that he had formerly been employed in the United States and in Germany as a clockmaker by clock manufacturing companies and that he is familiar with clocks and parts, including the involved clock weights. He has seen the weights produced in Germany. A wire loop is inserted approximately a half inch down into the top of a die into which molten cast iron is then poured. After cooling, the die is taken apart, and the weight is re-

moved and colored. Nothing else is done to it.

Plaintiff's exhibit 1, a representative sample of the weight, is in the shape of a pine cone approximately seven and one-half inches long with a loop firmly embedded in the top.

In the witness' opinion, an assembly is "anything that you put together and can take apart" without ruining it. Plaintiff's exhibit 1, he stated, is a one-piece article. He described a balance wheel as a "rim with the two metals", but did not know how it was joined together or if it could be taken apart. A mainspring with riveted ends could be taken apart by heating the article and removing the rivets. He was certain that the hook could not be removed from the body of the weight although he had never tried it.

It is not disputed that the subject clock weights are parts of clocks. The sole issue is whether each consists solely of one piece or part, or, as found by the collector, is an assembly consisting of two or more parts or pieces of metal fastened or joined together within the meaning of paragraph 368(c) (3).

Plaintiff claims that the weight cannot be an assembly as it consists of only one part; that "two identifiable parts do not exist"; and that "the hook cannot be removed or separated from the whole article." Defendant contends that the weight is composed of two parts: a wire loop and a cast iron body; that the process of putting the loop and the body together falls within the common meaning of the term "join"; that the specific proviso in paragraph 368(c) (3) that mainsprings with riveted ends, which are composed of two pieces joined together, "be considered as one part or piece," makes it clear that the clock weight is an assembly; and that, assuming this court adopts plaintiff's definition of assembly, the latter has failed to prove that the weight cannot be taken apart.

The master rule in the construction of statutes is so to interpret the language as to carry out the legislative intent. Brecht Corp. v. United States, 25 CCPA 9, T.D. 48977 (1937). Thus, the question posed is what Congress intended in providing for an "assembly * * * consisting of two or more parts or pieces of metal * * * joined or fastened together * * * ".

Our appellate court, in Hammel Riglander Pennant Corp. v. United States, 22 CCPA 204, T.D. 47139 (1934), had occasion to construe identical language used in paragraph 367(c) (3) which reads:

(3) each assembly or subassembly (unless dutiable under clause (1) of this subparagraph) consisting of two or more parts or pieces of metal or other material joined or fastened together shall be subject to a duty of 3 cents for each such part or piece of material, * * *. For the purpose of this clause bimetallic balance wheels (not part of a balance assembly), and mainsprings with riveted ends, shall each be considered as one part or piece;

The merchandise involved therein consisted of watch crowns composed of two pieces of metal, a core and a shell, clamped together. One contention of importer-appellant was that the crown was incapable of being disassembled without being ruined and, therefore, was neither an "assembly" nor "subassembly" within the meaning of the aforesaid paragraph; and that, if considered to be parts of watch movements, the crowns were dutiable under paragraph 367(c) (4), which provides for individual parts thereof.

Reviewing the legislative history of that provision, the court referred to Senate Finance Committee Report No. 37 accompanying H.R. 2667, subsequently enacted as the Tariff Act of 1930, which states, at page 16, et seq., that subparagraph (c) (4) was intended to—

encourage the importation of individual parts, for assembly on a factory basis in the United States, instead of the importation of incomplete mecha-

nisms and subassemblies which can usually be assembled without factory equipment and with a minimum of labor.

The court also noted that Congress had expressly provided that bimetallic balance wheels not part of a balance assembly and mainsprings with riveted ends be considered as one part or piece, stating that, whatever may have been the reason for excepting balance wheels, which are composed of two different metals, and mainsprings with riveted ends, which "are obviously composed of more than one part or piece of material," it was—

> evident that the Congress considered it necessary, in order to prevent their classification under the provisions for assemblies or subassemblies, to expressly except those parts of watch movements from the operation of those provisions.

The court thereupon held, at page 211:

> In view of the fact that the involved watch crowns, although parts of watch movements, are composed of two parts or pieces of metal joined or fastened together, they are within the literal meaning of the language contained in clause (3), *supra*. Moreover, considering the language and the legislative history of the provisions in question, we are of opinion that the Congress meant exactly what it said, and that, whether they are called assemblies or subassemblies, two or more *finished parts* of metal or other material joined or fastened together, and, also, *two or more pieces* of metal or other material joined or fastened together, were intended, unless expressly excepted therefrom, to be dutiable under those provisions. * * * [Emphasis copied.]

The *Hammel Riglander* decision, *supra*, was cited as controlling with respect to classification of watch crowns consisting of six parts each in Colomby Watch Co. (Rohner Gehrig & Co., Inc.) v. United States, 27 Cust.Ct. 7, C.D. 1339 (1951). Gold-filled watch crowns had previously

been held dutiable under said paragraph in C. & E. Marshall Co. v. United States, 63 Treas.Dec. 995, T.D. 46442 (1933).

In Herman Miller Clock Co. v. United States, 22 CCPA 332, T.D. 47363 (1934), the appellate court held that bezels for clock dials, composed of seven separate pieces of metal, were properly classified under paragraph 368(c) (3), rather than under subparagraph (c) (6) thereof, stating that the latter included only parts not theretofore specifically provided for. The court also stated that it found nothing in the *Hammel Riglander* case, *supra*, which was out of harmony with the conclusion reached.

In Benrus Watch Co. v. United States, 72 Treas.Dec. 715, T.D. 49289 (1937), this court considered the applicability of paragraph 367(c) (1), (c) (3), and (c) (4) with respect to balance wheels composed of three pieces of metal and a jewel. The court held that clause (c) (4) was restricted to all other single material parts which were not theretofore specifically provided for, except jewels, noting the construction placed upon the identical provision in paragraph 368(c) (6) by the appellate court in the *Herman Miller* case, *supra*. This court went on to state, at page 722:

> The "other parts" contemplated by paragraph 367(c) (4) must mean parts composed of a single piece of metal or other material, such as wheels, springs, etc., which may be fashioned out of one piece. To join or fasten such a piece to another piece of the same or other material would make an assembly or subassembly as contemplated by paragraph 367(c) (3). An unset jewel is of course composed of one piece. Hence, as in the case of paragraph 367 (c) (1) it was necessary to exclude such jewels from paragraph 367(c) (4), which, as before stated, we believe is confined to *unjoined and unfastened parts composed of one piece of metal or other material*. [Emphasis supplied.]

█ It is appropriate to look to the legislative history of a tariff term to determine the congressional intent where

a phrase is found to be ambiguous or susceptible of more than one meaning. United States v. Durst Mfg. Co., Inc., 46 CCPA 74, C.A.D. 700 (1928). The ambiguity in the phrase, "two or more parts or pieces of metal or other material joined or fastened together," in paragraph 368(c) (3) justifies our referring (as did the appellate court with respect to identical phrasing in the *Hammel Riglander* case, *supra*) to the legislative background herein.

Report No. 37 of the Senate Finance Committee states, at page 18, with reference to paragraph 368, that subparagraph (c), as rewritten by it, provides for rates (1) on subassemblies not containing plates, which would prevent the assessment of prohibitive ad valorem rates; (2) on assemblies containing plates, which would permit entry of mechanisms at somewhat lower rates than would be assessed upon assembled mechanisms; and (3) on "individual pieces or parts of metal or other material for factory assembly in the United States at still lower rates."

The Supplement to Tariff Information on Items in Tariff Bill of 1930 (H.R. 2667), prepared by the United States Tariff Commission for use of the Senate Finance Committee and House Committee on Ways and Means, reports on the Senate revision of the House version of paragraph 368(c), at page 215:

> Subparagraph (c) is completely rewritten, providing changes as follows:
>
> (c) (1) provides for the importation of replacement parts at a reduction from the rates in the House bill and the act of 1922.
>
> (c) (3) and (c) (4) provide for subassemblies and incomplete mechanisms at rates greatly reduced from those in the House bill. The rates provided on such materials are estimated to permit importation of sufficient materials for complete mechanisms at lower cost for duty than would be paid on complete mechanisms.
>
> (c) (5) provides for single pieces of metal or other material which may be

assembled in the United States on a factory basis. The rate, which is increased to 65 per cent from the rate of 50 per cent in the act of 1922, is unchanged from the corresponding provision in the House bill.

Subclause (c) (5) was subsequently enacted as (c) (6) of paragraph 368.

In light of the legislative history of the disputed provision, which was enacted for reasons similar to those underlying paragraph 367(c), and of the judicial construction of identical language contained in the latter, we are disposed to find that parts of clocks composed of two or more pieces of metal joined or fastened together, whether or not capable of being detached, are classifiable, unless expressly excepted therefrom or specially provided for elsewhere, under subclause (c) (3) of paragraph 368.

Our conclusion is reinforced by the specific exception in that subclause of bimetallic balance wheels and mainsprings with riveted ends, which are to be considered as one part or piece. A mainspring with a riveted end is composed of two or more pieces joined or fastened together. So is a bimetallic balance wheel, which was described by the witness as a rim with two metals. His description is supported by written authority, to which the courts may resort as an aid in determining the common meaning of a tariff term. United States v. C. J. Tower & Sons, 44 CCPA 1, C.A. D. 626 (1956). The term "bimetallic balance" is defined in the Illustrated Professional Dictionary of Horology, G.-A. Berner, Edité par la Chambre suisse de l'Horlogerie, La Chaux-de-Fonds (undated):

> BALANCE n. Device which, by oscillating, regularizes the movement of the train of a watch or clock.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Ordinary bimetallic balance or compensation balance. The rim *a* is made of two metals of different expansibility (steel and brass) soldered together. It is cut at *c*, near

the arm *b*.   [a, b, and c refer to sections of an accompanying illustrated diagram of a balance wheel.]

If Congress felt it necessary to specifically except from classification as "assembly" or "subassembly" a balance wheel composed of two pieces of metal soldered together, its understanding of those terms apparently extends to two or more pieces of metal or material, such as the clock weights at bar, which are permanently joined or fastened together.

Therefore, based on the foregoing, we conclude that the subject weights are assemblies composed of two pieces of metal joined or fastened together, as found by the collector herein.   The classification is affirmed;   the protest is overruled.

Judgment will be entered accordingly.